UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON
SEP 1 3 2013
PER _____/_____
DEPUTY CLERK

NEFTALI T. BLISS,               :
                                :
        Petitioner              :
                                :
    v.                          : CIVIL NO. 3:CV-13-1958
                                :
WARDEN SAUERS,                  : (Judge Kosik)
                                :
        Respondent              :

## MEMORANDUM

Petitioner, Neftali T. Bliss, is an inmate confined at the Low Security Correctional Institution at Allenwood ("LSCI-Allenwood"), Pennsylvania. He filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on July 18, 2013, wherein he challenges the disciplinary proceedings conducted against him. These proceedings resulted in sanctions including the loss of twenty-seven (27) days of good conduct time and the forfeiture of sixty (60) days of non-vested good conduct time for the prohibited act of "Conduct which Disrupts the Security or the Orderly Running of the Institution," most like a Code 212 offense of "Engaging in or Encouraging a Group Demonstration." Specifically, Petitioner maintains that his due process rights were violated when he was denied the right to appear before an

impartial disciplinary officer and was not provided with the opportunity to call witnesses. He further contends that the finding of guilt was not supported by the evidence. The petition is ripe for consideration and, for the reasons that follow, will be denied.

I.  **Background**

On May 26, 2010, Petitioner was sentenced in the United States District Court for the Western District of New York to 97 months imprisonment for "Conspiracy to Possess with Intent to Distribute and to Distribute 50 Grams or more of Cocaine Base" in violation of 21 U.S.C. § 846. His projected release date is December 11, 2015, via good conduct time release. (Doc. 6-1, Ex. 1, DeSanto Decl. ¶ 3.) Petitioner received an incident report (#2331326) on July 25, 2012 with respect to conduct that occurred that day charging him with violating Code 299 (most like 212), "Conduct which Disrupts or Interferes with the Security or the Orderly Running of the Institution, most like, Engaging in or Encouraging a Group Demonstration." (Id., ¶ 5; Attach. 1, Incident Report.) The incident report prepared by Officer M. Russell provided the following "Description of the Incident":

> On July 25, 2012, at approximately 10:56 Am, I was making rounds through the Units big TV room. I saw an inmate sitting towards the front of the room using two chairs. Bliss was sitting in one chair and had his legs lying across the other chair. I stated in his direction to put his feet down. Inmate Bliss had on headphones did not react to me so I walked

2

up to him and stated it again, to which he still did not respond. I approached inmate Bliss from his right side. I again ordered him to put his feet down. At this time I tapped the chair, with my left foot, that inmate Bliss's legs were lying over, and again ordered him to put his feet down. Inmate Bliss pushed his chair out from under his legs. Bliss started getting boisterous towards me stating my feet weren't on the chair. There were other inmates in the TV room while Bliss started getting louder stating this is crazy. At this time Inmate Bliss was asked to leave the TV Room. While Bliss was leaving the TV Room he started yelling "Ya'll seen that! You seen him didn't you!" and looked at me and said "You know I am filing on you." Inmate Bliss's conduct was becoming disruptive in nature so I then ordered inmate Bliss to the Officer's office. While I was counseling this inmate on his behavior, about 5 to 10 minutes later, he looked at Officer Miller and stated I have to go to the hospital. Inmate Bliss was dismissed from the office. As I was walking through the front lobby Inmate Bliss was standing in a group of unidentified inmates talking loud enough for all to hear looking at me stating "I can't believe he kicked my chair, can you. This is crazy." This behavior is disruptive in nature and could affect the security and orderly running of the Institution and, incite inmates to riot or become disruptive themselves.

(Doc. 6-1, Incident Report.) Bliss received advanced written notice of the charges against him by Lieutenant E. Klinefelter on July 25, 2012 at 6:40 p.m. (Doc. No. 6-1, Ex. 1 at ¶ 7; Attach. 1 at 1.)

Klinefelter advised Bliss of his right to remain silent, and Bliss displayed a poor attitude and made the following statement: "This this (sic) is bullshit, I was sitting in the tv room when the officer kicked the chair out from under my legs and told me to get out. When I walked by the officer's office, he told me to get in here. The officer said this was all over, and I asked to go the hospital that is it." (Id., Ex. 1

3

at ¶ 8; Attach. 1 at 3.) Based on the information in the incident report, Klinefelter found the charge was justified as written and the inmate was appropriately charged. He thereafter referred the incident report to the Unit Discipline Committee ("UDC") for further disposition. (Id. at ¶ 9; Attach. 1 at 3.)

Bliss appeared before the UDC on July 27, 2012. He stated that the statement above was not true and that, without speaking a word to him, the reporting officer kicked a chair out from underneath him. (Id. at ¶ 10; Attach. 1 at 2.) Because of the seriousness of the alleged misconduct, the matter was referred by the UDC to the DHO with a recommendation of loss of good conduct time and disciplinary segregation. (Id. at ¶ 11; Attach. 1 at 2.)

Bliss was provided with a copy of the "Inmate Rights at Discipline Hearing" form because the matter was referred to the DHO. This form advised Bliss of the following rights:

> - the right to have a written copy of the charge(s) against him at least 24 hours prior to appearing before the DHO;
> - the right to have a full-time member of the staff who is reasonably available to represent him before the DHO;
> - the right to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence on his behalf, provided institutional security would not be jeopardized;
> - the right to present a statement or to remain silent;
> - the right to be present throughout the discipline hearing except during a period of deliberation or when institutional security would be jeopardized;
> - the right to be advised of the DHO's decision, the facts supporting the

decision, except where institutional security would be jeopardized, and the DHO's disposition in writing; and
- the right to appeal the DHO's decision through the Administrative Remedy Procedure.

(Id. at ¶ 12; Attach. 2.) Respondent states that because Petitioner refused to sign the form, the form was signed by Unit Manager Rodarmel as a witness. (Id. at ¶ 13, Attach. 2.)

Petitioner was also provided with a copy of the "Notice of Discipline Hearing Before the Discipline Hearing Officer ("DHO") form. (Id. at ¶ 14; Attach. 3.) This Notice also provided Petitioner the opportunity to have a staff representative and call witnesses. The form dated July 27, 2012 reflects that Petitioner refused to sign it on said date. It is further reflected on the form that on August 8, 2012, the warden appointed a staff representative for the DHO hearing, but that prior to the August 29, 2012 DHO hearing, Petitioner waived the staff representative. Also on the form is the written notation that Petitioner requested Inmate Franklin as a witness. (Id.)

The DHO hearing was conducted on August 29, 2012. (Doc. 6-1 at ¶ 15; Attach. 4, DHO Report.) DHO Bittenbender noted that Petitioner had received advance written notice of the charges on July 25, 2012; that he had been advised of his rights on July 27, 2012; and that he had initially requested a staff representative at the DHO hearing scheduled for August 8, 2012, and assigned a staff representative,

but that prior to the August 29, 2012 DHO hearing he waived his request. Said waiver was documented on BP-294 and documented by Unit Team Manager Rodarmel. (Id. at ¶ 16; Attach. 4.) At the DHO hearing, Petitioner did request to call a witness - Inmate Franklin. It was further noted that Petitioner denied the charges. (Id. at ¶ 17; Attach. 4.) The DHO again advised Petitioner of his rights at the hearing. (Id. at ¶ 18; Attach. 4.)

> At the hearing, Petitioner made the following statement:
>
> When in the TV room I told him I was going to write him up and file a complaint and we went to the officer where he tried to apologize to me. I told him he never told me about putting my feet on the chairs and I told him I was going to write him up and then told him I needed to see medical since I had both my legs on the chair and when he kicked the chair I hurt my feet and legs. When he kicked he chair, it was loud enough to have everyone hear and I wasn't loud enough to be disruptive.

(Doc. 6-1, Ex. 1 at ¶ 19; Attach. 4.) In addition, at the hearing no procedural issues were cited by Petitioner and he provided no documentary evidence. (Id. at ¶ 20.)

> At the hearing, inmate witness Franklin testified as follows:
>
> I have no nickname and I go by Jeremy or Jersey in the unit. I don't recall where I was on July 25, 2012 at 10:56 a.m., I was probably in the unit. I don't know any information about what may have happened in the unit. I didn't see anything to draw any conclusion. I only heard from other inmates (hear-say) but I don't remember being in the TV Room. There are usually about 20 inmates in the TV room around that time. That's all I know.

(Doc. 6-1, Ex. 1 at ¶ 21; Attach. 4 at 2.)

6

The documentary evidence considered by DHO Bittenbender included the Incident Report and Investigation, and a memorandum from Senior Officer Specialist D. Miller dated July 25, 2012 that corroborated the evidence cited in the report. (Id., Ex. 1 ¶ 22; Attach. 5). The DHO also considered Petitioner's statement, as well as those made by the witness, which discredited Petitioner's statement.

After considering all of the evidence, DHO Bittenbender believed the information provided by the staff member involved in the case, as he derived no known benefit by providing false information. The DHO found the charge of "conduct which disrupts the orderly running of the institution – most like encouraging a group demonstration" to have threatened the orderly running of the facility, as well as the safety of both staff and inmates, and to be supported based upon the greater weight of the evidence. (Doc. 6-1, Attach. 4, DHO Report at 3.) Any negatively intended group action in a prison setting promotes potential unrest and violence and, in this case, Petitioner attempted to gain support and attention to his complaint with a staff member, threatening the safety of both inmates and staff. For these reasons, the DHO sanctioned Petitioner to disciplinary segregation of 60 days, the disallowance of good conduct of 27 days, the forfeiture of non-vested good conduct time of 60 days, and the loss of phone and visiting privileges for 8 months.

DHO Bittenbender advised Petitioner of his findings, the specific evidence

7

relied upon, the actions taken against him and the reasons for those actions. (Id. at 4.) Petitioner was further advised of his right to appeal within twenty (20) calendar days. He was provided with a copy of the DHO report on September 5, 2012. (Id.)

## II. Discussion

In challenging the disciplinary proceedings conducted with respect to the incident report, Petitioner claims that the DHO was not impartial, that he was denied the opportunity to call witnesses, and that the finding of guilt was not supported by the evidence. The BOP disciplinary process is fully set forth in the Code of Federal Regulations, Title 28, Sections 541 through 541.8.[1] These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate institutional rules. The first step requires filing an incident report and conducting an investigation. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. See 28 C.F.R. § 541.5. Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is

---

[1] The Court notes that the BOP's Inmate Discipline Program Regulations were revised and that the new regulations became effective on June 20, 2011. While the numbering of the regulations changed, the substance of the regulations basically remained the same with respect to the disciplinary review process.

8

serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a hearing. Id. Based upon the seriousness of the charges against Petitioner, and the requirement of sanctions greater than could be afforded by the UDC, the instant matter was referred for a disciplinary hearing.

Greatest category offenses carry a possible sanction of loss of good conduct time credits. When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. See Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974). The DHO's decision is required to be supported by some evidence in the record. See Superintendent v. Hill, 472 U.S. 445, 454 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991)(applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing

of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56. Under Hill, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. Id. at 457; see also 28 C.F.R. § 541.8(f)(requiring that the DHO's decision be "based upon at least some facts and, if there is conflicting evidence, on the greater weight of the evidence."). Moreover, "[t]he sufficiency standard is met where a DHO supports a finding of culpability solely by reference to an incident report compiled by a corrections officer." Moles v. Holt, 221 F. App'x 92, 94 (3d Cir. 2007)(citations omitted).

### A. Petitioner was afforded all required Due Process protections and received an appropriate sanction

The record in this case reveals that the procedural requirements of Wolff and Hill have been met. In the petition filed with the court, Petitioner did not dispute receiving 24 hour advance written notice of the charges against him, the ability to present documentary evidence, the opportunity to have assistance from a staff member, or receiving a written decision by the DHO as to the evidence relied upon and the rationale for the disciplinary action taken against him. (Doc. 1, Pet.) The

Petition speaks for itself with respect to the challenges raised with respect to the DHO proceedings at issue in this case. While Petitioner attempts to dispute basically every single fact set forth in the response to the petition submitted by Respondent in an effort to create issues of fact, he does so without offering one shred of documentary evidence to support his statements. As such, the court will only address the grounds set forth by Petitioner in his habeas petition.

First, while Petitioner asserts that the DHO was not impartial, there is no support for this claim. The basis of Petitioner's challenge is that the DHO did not comply with Petitioner's right to call witnesses in his defense. Petitioner claims that he presented questions to the DHO for inmate Thomas Taylor and another inmate he knows by the nickname of "Freak," as well as for Officer Miller and SIS Lieutenant Sheets. He claims that his requested witnesses were denied, and that the DHO brought an inmate before him that Petitioner did not know and who gave unfavorable testimony that the DHO relied upon in reaching his decision. This argument goes hand-in-hand with Petitioner's second challenge that he was denied the opportunity to call witnesses at his DHO hearing. As such, the claims will be addressed together.

Due process requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v. Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct

11

personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." Meyers, 492 F.2d at 306. In the past, inmates have often requested courts to set aside disciplinary hearing results based upon general assertions of staff bias. Yet, such requests have rarely been embraced by the courts. In the absence of a showing that the hearing officer was "personally or substantially involved in the circumstance underlying [the investigation of the] charge," Greer v. Hogston, 288 F. App'x 797, 799 (3d Cir. 2008), courts generally decline to strike down disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F. App'x 488 (3d Cir. 2007).

In the instant case, DHO Bittenbender did not act in the capacity of reporting officer, investigating officer or UDC member with respect to the conduct charged in the incident report. Moreover, the DHO was not a witness to the incident and did not play any significant role in having the charges referred for a hearing before the DHO. As such, he makes no showing that the DHO was not impartial. See Williams v. Hislop, Civ. A. 3:CV-07-0590, 2007 WL 4111427 (M.D. Pa. Nov. 16, 2007).

To the extent that Petitioner claims that he was not afforded the opportunity to call witnesses at his hearing, and that the DHO was somehow involved in this conduct, the record does not support any such claim. When the UDC referred the

charges to the DHO, Petitioner was provided with a copy of the "Inmate Rights at Discipline Hearing" form advising him of his rights before the DHO. (Doc. 6-1, DeSanto Decl. at ¶ 12.) This form advised Petitioner, among other things, of his right to call witnesses at the disciplinary hearing. Because Petitioner refused to sign for his copy of the form, Unit Manager Rodarmel signed the form as a witness. A copy of the form reflecting this event is contained in the record. (Id., Attach. 2.)

Petitioner was also provided with a copy of the "Notice of Discipline Hearing Before the Discipline Hearing Office (DHO)" form. He requested the service of a staff representative and to call a witness (Inmate Franklin). He refused to sign the form, and Unit Manager Rodarmel signed the form as a witness documenting this event. (Id., Attach. 3.) When Petitioner appeared at the DHO hearing, the DHO again advised him of his rights. The DHO noted that while Petitioner had previously requested his right to staff representation, prior to commencing the 8/29/12 DHO hearing, he indicated that he wished to waive his request for staff representation, but did wish to call a witness nicknamed "Freak" in "Cube 1 in L.A." This inmate was identified as CSWL LA Franklin. This information was documented on BP-294, as well as by Unit Team Manager Rodarmel. (Doc. 6-1, Attach. 4, DHO Report; Attach. 6, 8/24/12 Memo from Rodarmel to DHO Bittenbender.) He did indicate he wished to call a witness.

13

At the DHO hearing, Petitioner was permitted to make a statement and denied the conduct as charged. Inmate Franklin was called as a witness on Petitioner's behalf and the gist of his testimony was that he had no nickname and goes by "Jeremy or Jersey" in the unit, and had no information about what had occurred on the date in question. (Id., DHO report at 2.) Petitioner did not provide any documentary evidence for the DHO's consideration and cited no procedural issues during the hearing.

Based upon the foregoing, it cannot be concluded that Petitioner was denied the opportunity to present witnesses at the hearing. The documents in the record support the facts that he was provided with notice of his right to request and call witnesses and that, although he refused to sign the papers advising him of such right, he still requested a witness and this witness was present and testified at the hearing. While in his petition Petitioner claims he requested as witnesses Thomas Taylor, an inmate by the nickname of "Freak", Officer Miller and Lieutenant Sheets, there is no evidence in support of any request other than "Freak." Even assuming for the sake of argument that the inmate presented on Petitioner's behalf at the hearing was not the correct inmate, or if other witnesses had been requested, Petitioner should have made this known at the hearing. There is no documentary evidence supporting these claims. In fact, the DHO report reflects that no procedural issues were cited by

Petitioner at the hearing. This clearly undermines any attempt by Petitioner in the instant habeas petition to advance arguments claiming that he never received any notices, never refused to sign any papers, never received witnesses he requested at the hearing and so on. Furthermore, the record also contains the memo from Officer Rodarmel corroborating that only one witness was ever requested in the first place. Furthermore, the DHO did consider a Memorandum by Officer Miller, one of the witnesses Petitioner claims he requested.

In addition, Respondent aptly points out that even if these other witnesses had been requested and were not presented at the hearing, no prejudice resulted to Petitioner for the following reason. Petitioner claims these witnesses could have testified about the statements he made during the incident that Petitioner's remarks could not be "mistaken for anything devious." (Doc. 1, Pet. at 7.) Even if this were true, such testimony would not have changed the events that occurred which serve as the underlying basis for the charged offense or the evidence supporting the finding of guilt and sanctions imposed. For these reasons, the record does not support Petitioner's claim that he was not afforded the opportunity to call witnesses at his DHO hearing.

### B. The DHO satisfied the required evidentiary standard

Petitioner further contends that the findings of the DHO were not supported by

the evidence. He claims that the DHO "relied on solely his own assumption that was based on no existing facts as his documented reasoning for the disciplinary action." (Doc. 1, Pet. at 6.)

A DHO decision must be upheld if there is "some evidence" to support it. Superintendent v. Hill, 472 U.S. 445, 457 (1985). Once the court determines that there is "some evidence" to support the DHO's finding, the court must reject an evidentiary challenge by the petitioner and uphold the finding of the DHO. See Denny v. Schultz, 703 F.3d 140, 145 (3d Cir. 2013) (citing Hill, 472 U.S. at 454, 456).

In the instant case, the DHO clearly had "some evidence" to support his finding that Petitioner committed the prohibited act of "Conduct Which Disrupts Security and the Orderly Running of the Institution, Most Like Engaging in or Encouraging a Group Demonstration", Code 299, most like Code 212. The evidence relied upon in reaching this conclusion included the incident report written by Officer Russell, which reflected Petitioner's boisterous behavior when challenged by the BOP staff member (Doc. 6-1, Attach. 4 at 2), as well as Petitioner's behavior as documented in the Memorandum dated 7/25/12 prepared by Officer Miller. The DHO also found that the officers would derive no known benefit from providing false information and that the witness testimony at the DHO hearing supported the officer's version of the

events. For these reasons, the DHO found that Petitioner's conduct threatened the orderly running of the prison, as well as the safety of both staff and inmates. He reasoned that any negatively intended group action in a prison setting promotes unrest and potential violence and that Petitioner's actions brought un-needed attention to his cause of having a complaint with a staff member, thereby posing a threat to staff and inmates. (Doc. No. 6-1, Attach. 4 at 4.)

In light of the foregoing, it cannot be said that the DHO's findings that permitting such behavior could seriously disrupt the security and operation of the prison, and rejecting any self-serving claims by Petitioner in his reply brief that everyone else was lying about the incident, are unsupported by the record. Rather, the DHO was clearly within his discretion in finding some evidence to exist to uphold his conclusion that Petitioner violated Code 299, most like Code 212.

As supported by the record, and discussed above, the DHO's decision meets or exceeds the "some evidence" standard. Petitioner was found to have committed a High Severity Level Prohibited Act, in that he committed the prohibited act of Code 299. As a result, the sanctions imposed by the DHO were consistent with the severity level of the prohibited act and within the maximum available to the DHO. See 28 C.F.R. § 541.3 (2011). For these reasons, the instant habeas petition will be denied. An appropriate order follows.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

NEFTALI T. BLISS, :
:
    Petitioner :
:
v. : CIVIL NO. 3:CV-13-1958
:
WARDEN SAUERS, : (Judge Kosik)
:
    Respondent :

## ORDER

**NOW, THIS** 13th **DAY OF SEPTEMBER, 2013,** in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus is **denied**.

2. The Clerk of Court is directed to **close this case**.

_____
EDWIN M. KOSIK
United States District Judge